ANKA PODVINEC, Plaintiff-Appellee and Cross-Appellant, v. PREDRAG POPOV *et al.*, Defendants (La Salle National Bank *et al.*, Respondents-Appellants and Cross-Appellees).

First District (3rd Division)    No. 1—92—0805

Opinion filed August 17, 1994.

GREIMAN, J., dissenting.

Neal, Gerber & Eisenberg, of Chicago (Robert Radasevich, of counsel), for appellants.

Beermann, Swerdlove, Woloshin, Barezky, Becker, Genin & London, of Chicago (Alvin R. Becker, Christ G. Marinakis, and Timothy M. Kelly, of counsel), for appellee.

JUSTICE CERDA delivered the opinion of the court:

Respondents, La Salle National Bank, Dusan Zivkovic, Milan M. Rakic, and Milorad Cupic, appeal from an order of the circuit court of Cook County entering judgment against them based upon the imposition of a judicial lien on funds realized in a lawsuit brought against respondents by judgment debtors of plaintiff, Anka Podvinec. Plaintiff cross-appeals from the failure of the trial court to award post-judgment interest. We reverse the judgment against respondents.

The issue in this case is whether a lien can be created by court order in the absence of either an agreement between the parties or any statute.

On February 26, 1987, plaintiff, Anka Podvinec sued defendants, Predrag Popov and Jovanka Popov, in the law division of the circuit court of Cook County (case number 87 L 4357) based on a $55,000 instrument executed by defendants. On April 28, 1987, a memorandum of judgment in favor of plaintiff against defendants in the amount of $57,955 was entered.

On March 18, 1988, a citation to discover the assets of Predrag Popov was issued by the clerk of the circuit court. Alias citations to discover Predrag Popov's assets were issued on April 13, 1988, and on May 20, 1988. A citation to discover the assets of respondents La Salle National Bank, Dusan Zivkovic, Milan M. Rakic, and Milorad Cupic was issued on November 28, 1988. La Salle was served with the citation on December 16, 1988, but there is no indication in the record that the other respondents were ever served with the citation.

On October 17, 1988, Predrag Popov brought suit in the chancery division of the county department of the circuit court of Cook County (case number 88 CH 9370) to foreclose a mechanic's lien against Citicorp Savings of Illinois, "unknown owners," and respondents.

On December 22, 1988, the trial court in the Podvinec law division case ordered the following:

> "That the court hereby imposes a judicial lien upon any funds realized in the case of *P. Popov v. La Salle National Bank, et al.* 88 CH 9370 in the amount of $57,955.00 plus costs (effective upon notice to proper parties)."

On January 31, 1989, the trial court in the Popov chancery division case "spread of record" the judicial lien in favor of plaintiff.

On April 18, 1991, the Popov chancery division case was dismissed due to the settlement of the case.

On June 27, 1991, Podvinec filed a petition in the law division case for enforcement of the judicial lien against respondents, alleging the following. Some or all of respondents had paid or accepted funds in settlement of the Popov chancery division case without paying to Podvinec the sums subject to the judicial lien.

On November 19, 1991, plaintiff's petition for enforcement of judicial lien was granted, and judgment was entered against respondents. The court issued a memorandum decision and judgment in which it stated the following. The trial court had subject matter jurisdiction to spread the lien of record pursuant to section 2—1402(d)(2) of the Illinois Code of Civil Procedure (the Code) (735 ILCS Ann. 5/2—1402(d)(2) (Michie 1993)). Pursuant to section 2—1402(b)(1) of the Code (735 ILCS Ann. 5/2—1402(b)(1) (Michie 1993)), a party had a duty to honor the lien that was spread of record.

Respondents argue on appeal that plaintiff failed to follow proper procedures to enforce his judgment. Specifically, respondents argue that: (1) a citation to discover assets could only lien assets within the possession or control of the judgment debtor, and the property of the judgment debtor in the hands of third parties is not within the possession or control of the judgment debtor; and (2) the only methods to reach the judgment debtor's assets in the hands of third parties were to commence either supplementary or garnishment proceedings against the third parties.

Plaintiff argued the following in response, among other arguments. The trial court properly imposed a judicial lien because: (1) the trial court had the inherent authority to enforce its judgment and to fashion remedies for enforcement; (2) the circuit court of Cook County had jurisdiction over the parties and the subject matter in both the law division and the chancery division cases; (3) service of the citation to discover assets on the judgment debtor conferred a general lien in favor of the judgment creditor in the property of the judgment debtor; and (4) the enforcement of a judgment by imposition of a judicial lien was authorized by sections 2—1402(b) and 2—1402(d)(2) (735 ILCS Ann. 5/2—1402(b), (d)(2) (Michie 1993)).

The relevant sections of the Illinois Code of Civil Procedure are as follows.

Section 2—1402(a) provides in part:

> "A judgment creditor *** is entitled to prosecute supplementary proceedings for the purposes of examining the judgment debtor or any other person to discover assets or income of the debtor ***

and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due under the judgment. A supplementary proceeding shall be commenced by the service of a citation issued by the clerk." (735 ILCS Ann. 5/2—1402(a) (Michie 1993).)

Section 2—1402(b)(3) provides that a supplemental proceeding court can:

"[c]ompel any person cited, other than the judgment debtor, to deliver up any assets so discovered, to be applied in satisfaction of the judgment, in whole or in part, when those assets are held under such circumstances that in an action by the judgment debtor he or she could recover them." (735 ILCS Ann. 5/2—1402(b)(3) (Michie 1993).)

Section 2—1402(b)(5) provides that the court also may: .

"[c]ompel any person cited to execute an assignment of any chose in action *** in the same manner and to the same extent as a court could do in any proceeding by a judgment creditor to enforce payment of a judgment or in aid of the enforcement of a judgment." (735 ILCS Ann. 5/2—1402(b)(5) (Michie 1993).)

Section 2—1402(b)(6) provides that the court also may:

"[a]uthorize the judgment creditor to maintain an action against any person or corporation that, *** is indebted to the judgment debtor, for the recovery of the debt [and] forbid the transfer or other disposition of the debt until an action can be commenced and prosecuted to judgment." (735 ILCS Ann. 5/2—1402(b)(6) (Michie 1993).)

Section 2—1402(d)(2) provides in part that the court also may:

"enjoin any person, whether or not a party to the supplementary proceeding, from making or allowing any transfer or other . disposition of, or interference with, the property of the judgment debtor, or the property or debt concerning which any person is required to attend and be examined until further direction in the premises." 735 ILCS Ann. 5/2—1402(d)(2) (Michie 1993).

Section 2—1402(d)(1) further provides in part that the citation to discover assets:

"may prohibit the party to whom it is directed from making or allowing any transfer or other disposition of, or interfering with, any property not exempt from the enforcement of a judgment *** belonging to the judgment debtor or to which he or she may be entitled or which may thereafter be acquired by or become due to him or her, and from paying over or otherwise disposing of any moneys not so exempt which are due or to become due to the judgment debtor, until the further order of the court or the termination of the proceeding, whichever occurs first." 735 ILCS Ann. 5/2—1402(d)(1) (Michie 1993).

■ Plaintiff primarily relies on *People v. Valdez* (1980), 79 Ill. 2d 74, 402 N.E.2d 187, in his argument that the judicial lien was proper. In *Valdez*, the trial court entered an order requiring the Department of Mental Health and Developmental Disabilities (Department) to establish a treatment plan for defendant, who was acquitted by reason of insanity, to include at least two sessions per week with a psychiatrist. A statute provided that the trial court could order the discharge of a defendant under conditions that reasonably assured defendant's satisfactory progress. (Ill. Rev. Stat. 1977, ch. 38, par. 1005—2—4(i).) The Department argued that the trial court did not have jurisdiction to order the implementation of a specific court-designed treatment plan for defendant. The Department argued that the trial court was authorized to choose among only those dispositions expressly authorized in the statute and that the power of the courts over insane persons was derived only through legislative enactments.

The *Valdez* court referred to the 1970 Illinois Constitution's provision that the trial courts had original jurisdiction of all justiciable matters. Therefore, the rationale that the courts did not have jurisdiction over insane persons in the absence of statutory enactment was no longer applicable. (*Valdez*, 79 Ill. 2d at 85.) The court rejected the argument that the trial court was without authority either by reason of its lack of statutory authority or by reason of the doctrine of separation of powers to direct the Department as to the manner in which it was to perform its duties. *Valdez*, 79 Ill. 2d at 86.

Section 2—1402(d)(2) gave the trial court here the power to enjoin disposition of property. (735 ILCS Ann. 5/2—1402(d)(2) (Michie 1993).) The trial court did not use this statutory tool for enforcement but instead imposed a lien that was unauthorized by statute. Liens are created either by agreement or by statute. (*Streams Sports Club, Ltd. v. Richmond* (1982), 109 Ill. App. 3d 689, 692, 440 N.E.2d 1264, *aff'd* (1983), 99 Ill. 2d 182, 457 N.E.2d 1226.) Although the trial court had the general power to enforce its judgments (*Cities Service Oil Co. v. Village of Oak Brook* (1980), 84 Ill. App. 3d 381, 384, 405 N.E.2d 379), it did not have the power to create a lien. Calling the lien "judicial" did not give the trial court the power to create a lien.

In *Freer v. Hysan Corp.* (1985), 108 Ill. 2d 421, 484 N.E.2d 1076, the trial court imposed a lien that required plaintiff employee of a village to repay to the village workmen's compensation payments it made to him with the repayment to be made upon plaintiff's settlement of a personal injury lawsuit arising out of the accident in which he was injured. A statute gave the employer the right to reimbursement of the compensation paid to an employee who settled such a lawsuit. (Ill. Rev. Stat. 1975, ch. 48, par. 138.5(b).) The court

held that the trial court's lien was improper because a lien cannot be created by a court without an agreement between parties or some fixed rule of law usually found in a statute. (*Freer*, 108 Ill. 2d at 427.) The lien created by the court was unenforceable. *Freer*, 108 Ill. 2d at 427.

*Freer* (108 Ill. 2d 421, 484 N.E.2d 1076) is determinative of the issue of the propriety of the judicial lien imposed here. *Valdez* (79 Ill. 2d 74, 402 N.E.2d 187) is distinguishable because the trial court there did not create a remedy unauthorized by statute or agreement.

■ Plaintiff also argues that the judicial lien was proper because, under section 2—1402(d)(1), the service of the citation on Predrag Popov as the judgment debtor conferred a general lien on the judgment debtor's property. Section 2—1402(d)(1) states that the citation to discover assets may prohibit the party to whom it is directed from disposing of any nonexempt money which is due or to become due to the judgment debtor. (735 ILCS Ann. 5/2—1402(d)(1) (Michie 1993).) Despite the restraining language of the statute, it has been held not to constitute an injunction but to constitute simply a notice to a third party of the penalties for transferring or disposing of assets belonging to the judgment debtor. (*Bank of Aspen v. Fox Cartage, Inc.* (1989), 126 Ill. 2d 307, 314-16, 533 N.E.2d 1080.) A lien is a hold or a claim that one person has upon the property of another for a debt and is not property in the thing itself but a charge upon the property. (*Sissman v. Chicago Title & Trust Co.* (1940), 303 Ill. App. 620, 624-25, 25 N.E.2d 599, *aff'd* (1941), 375 Ill. 514, 32 N.E.2d 132.) Section 2—1402(d)(1) does not create a lien in the judgment debtor's property because the statute does not give the judgment creditor a charge on the judgment debtor's property. None of the other cited sections of the statute created a lien.

We do not reach Podvinec's cross-appeal concerning post-judgment interest because we reverse the judgment against respondents.

The judgment of the trial court against respondents is reversed.

Reversed.

TULLY, P.J., concurs.

JUSTICE GREIMAN, dissenting:
The majority relies exclusively upon what it assumes to be the language of section 2—1402 (735 ILCS 5/2—1402 (West Supp. 1993)) and cases considering the section prior to the extensive amendments to section 2—1402 in 1993. However, the facts of this case, although

occurring long before the adoption of the amendment, must be read in light of the amendment because section 2—1402(l) expressly provides: "This Amendatory Act of 1993 is a declaration of existing law." 735 ILCS 5/2—1402(l) (West Supp. 1993).

To briefly restate the facts, in a Cook County law division case, plaintiff Podvinec obtained a judgment against Popov. During citation proceedings, plaintiff discovered that Popov had a case against the defendants pending in the chancery division of the Cook County circuit court. Plaintiff then sought to create a judicial lien upon any proceeds realized from the chancery case. To that end, plaintiff presented a petition to spread his lien of record in the chancery case where the defendants were all parties of record, had all been served with summons and received notice of plaintiff's petition seeking the imposition of a "judicial lien." An order was entered in the chancery case allowing the imposition of such a lien and some months later the defendants and Popov settled the chancery case, ignoring the "judicial lien" which had been spread of record. Plaintiff now seeks to hold the defendants to the amount they paid in settlement to Popov.

To follow the letter of the provisions of section 2—1402, plaintiff should have initiated supplementary proceedings against the defendants, had summons issued and served upon them, examined them in an appropriate forum and then reduced to an order one or several of the remedies granted to a judgment creditor under the statute.

Among other things, plaintiff could have compelled Popov to assign his cause of action to him (735 ILCS 5/2—1402(c)(5) (West Supp. 1993)) or obtained an order allowing plaintiff to maintain the action in the chancery against defendants or therein intervened (735 ILCS 5/2—1402(c)(6) (West Supp. 1993)) or restrained defendants from paying Popov any sums which may become due to him (735 ILCS 5/2—1402(f)(1), (f)(2) (West Supp. 1993)). To be sure, there are technical requirements aimed at assuring that the parties all have notice and that they are aware of the details of the underlying judgment but plaintiff did none of these! However, these requirements have been obliquely satisfied by the petition offered in the chancery court of which the defendants do not deny they had notice.

Like plaintiff, the defendants were not without options at the time plaintiff served them with notice that he sought to impress the proceeds of any money due or to become due with a "judicial lien." They could have objected to the character of the lien or the failure of plaintiff to institute a proper supplementary proceeding, to issue new summons, or to serve the summons upon them. In addition, the

defendants could have complained that the petition did not expressly use the language of the statute in seeking a remedy or that the magic language of section 2—1402(b) which provides the items of which the respondent in supplementary proceedings must be afforded notice is missing or that the debtor has not had an opportunity to assert any exemptions to which he might be entitled. (735 ILCS 5/2—1402(b) (West Supp. 1993).) But the defendants did none of these!

Section 2—1402 provides *a* method of satisfying a judgment, not *the* method. Section 2—1402(i) provides that this section "is in addition to and does not affect enforcement of judgments or proceedings supplementary thereto, by any other methods now or hereafter provided by law." 735 ILCS 5/2—1402(i) (West Supp. 1993).

The 1993 amendment, by its terms declarative of existing law, provides us with language that appears to bring this case within its penumbra. Section 2—1402(l) allows a creditor to reach assets which may become due to the debtor from a third party.[1] Thus the statute anticipates the creation of a lien and the effect of such on the debtor's property, whether due immediately or in the future, in the possession or control of third persons as was the case in the instant matter.

The statute establishes the procedures that are to be followed in instituting supplementary proceedings: commencement by service of a citation issued by the clerk, certain language indicating that the person to whom the summons is directed could be in contempt of court and subject to jail if the document is ignored, limitation on the granting of a continuance and conditions under which an examination of a cited person should be conducted. 735 ILCS 5/1402(a) (West Supp. 1993).

Save for the service requirement and the notice of possible contempt, none of the provisions raise due process concerns. As to the issue of service, the defendants were duly served in the chancery

---

[1]Section 2—1402(l) provides:

"The judgement or balance due on the judgement becomes a lien when a citation is served in accordance with subsection (a) of this Section. The lien binds nonexempt personal property, including money, choses in action, and effects of the judgement debtor as follows: ***

(2) When the citation is directed against a third party, upon all personal property belonging to the judgement debtor in the possession or control of the third party or which thereafter may be acquired or come due the judgement debtor and comes into the possession or control of the third party to the time of the disposition of the citation." 735 ILCS 5/2—1402(l)(2) (West Supp. 1993).

case and do not claim that they did not receive notice of plaintiff's intention to spread the judgment of the law division case of record nor ought we to concern ourselves with the required legend relating to contempt since plaintiff has not requested that the defendants be held in contempt but merely seeks that a judgment be entered against them.

As to the subject matter jurisdiction of the chancery division to enforce the judgment of the law division, we note that circuit courts are tribunals of general jurisdiction which have equal and concurrent subject matter jurisdiction. (*In re Estate of Zoglauer* (1992), 229 Ill. App. 3d 394, 593 N.E.2d 93; *Olsen v. Karwoski* (1979), 68 Ill. App. 3d 1031, 386 N.E.2d 444.) Accordingly, a judge in one division can enforce an order entered by a judge sitting in another division. *Olsen*, 68 Ill. App. 3d at 1034.

The method employed by plaintiff is not completely without precedent. In *Home State Bank/National Association v. Potokar* (1993), 249 Ill. App. 3d 127, 617 N.E.2d 1302, the plaintiff creditor obtained a judgment against the defendant debtor in the circuit court of McHenry County. During examination of the debtor in a citation to discover assets, the creditor discovered that the debtor was a plaintiff in a lawsuit pending in the United States District Court for the Northern District of Illinois and first obtained an order from the circuit court directing the debtor to assign his interest in the Federal cause of action to satisfy the judgment. In addition, the circuit court entered a second order "requiring [the debtor] to turn over the proceeds from his Federal court lawsuit. *The [second] order further provided that it constituted a lien on such proceeds to be imposed upon the attorney for the defendants in that [the Federal] lawsuit."* (Emphasis added.) (*Potokar*, 246 Ill. App. 3d at 130.) The *Potokar* court did not find such procedure troublesome and in fact considered it an exercise in due caution:

> "[T]he [creditor] apparently was concerned about its ability to reach the proceeds of the Federal court litigation, should they actually be distributed to [the debtor], and the [second] order was an attempt to obtain control over any potential recovery in [the debtor's] lawsuit before [the debtor] did." *Potokar*, 249 Ill. App. 3d at 132.

The majority would allow the defendants to sit idly by and at the appropriate moment ignore an order of the circuit court. To allow the defendants that luxury is contrary to the law and is not in the interest of a society that imposes upon itself the rule of law. I therefore dissent.